EFFRON, Chief Judge
(dissenting):
Exhaustion of remedies is a critical component of litigation concerning the conditions of confinement. Our case law requires an appellant to demonstrate exhaustion of remedies absent unusual or egregious circumstances. See, e.g., United States v. White, 54 M.J. 469, 472-73 (C.A.A.F.2001). As noted in the majority’s opinion, the exhaustion requirement promotes two goals: (1) resolution of grievances at the lowest possible level; and (2) development of an adequate record for judicial review.
The record in the present case demonstrates that Appellant did not pursue the opportunities for relief that were available early in his period of confinement when he had the assistance of counsel. Further, the record does not establish the unusual or egregious circumstances that would excuse failure to exhaust under our case law. Under these circumstances, I respectfully dissent from the majority’s decision to remand this case to the United States Army Court of Criminal Appeals for proceedings on the merits of Appellant’s claim.
I. BACKGROUND
A. RECENT SUPREME COURT DECISIONS ON EXHAUSTION OF REMEDIES
Recent decisions by the Supreme Court confirm our reliance on the exhaustion doc *479 trine, but call into question our practice of placing the burden on the appellant to demonstrate exhaustion.
In Woodford v. Ngo, — U.S. -, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), the Supreme Court underscored the dual purposes of the exhaustion requirement in the context of the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (2000). First, exhaustion creates an incentive for resolution of claims at the prison level without resort to litigation. Woodford, 126 S.Ct. at 2388. Second, “exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.” Id.
In Jones v. Bock, — U.S. -, -, 127 S.Ct. 910, 919, 166 L.Ed.2d 798 (2007), the Supreme Court considered which party should bear the burden of proving exhaustion. The Supreme Court concluded that failure to exhaust administrative remedies is an affirmative defense available to the government in civil litigation about prison conditions. Id. at 921. In that context, once a prisoner raises a claim of illegal punishment, the burden is on the government to prove failure to exhaust. Id.
Although our prison condition litigation arises in a criminal rather than a civil context, we typically have looked to the Supreme Court’s doctrine in such cases to guide the litigation of prison condition complaints in the military justice system. See, e.g., United States v. Lovett, 63 M.J. 211, 215 (C.A.A.F.2006) (relying on Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), to allocate the relative burdens of the parties on the merits of a prison conditions claim). Our practice of placing the burden on an appellant to prove exhaustion is a judicial doctrine, not specifically required by the Uniform Code of Military Justice or the Manual for Courts-Martial. In light of the Supreme Court’s decision in Jones, 127 S.Ct. at 921, it is not apparent why the prison condition litigation in the military should not place the burden on the government rather than on the defense to demonstrate a failure to exhaust available remedies,
B. THE CONVENING AUTHORITY’S POWER TO PROVIDE A REMEDY FOR ILLEGAL CONFINEMENT CONDITIONS
The convening authority has broad power to provide relief for illegal confinement conditions imposed prior to the convening authority’s action on the sentence under Rule for Courts-Martial (R.C.M.) 1107. In the course of taking such action, the convening authority has broad discretion to disapprove the sentence in whole or in part, mitigate the sentence, or change the sentence as long as the severity of the punishment is not increased. R.C.M. 1107(d)(1). The requirement for post-trial action on the sentence provides an opportunity to bring illegal confinement conditions to the attention of a responsible official, because the convening authority is obligated to consider “any matters submitted by the accused under R.C.M. 1105 or, if applicable, R.C.M. 1106(f).” R.C.M. 1107(b)(3)(A)(iii).
The defense counsel’s obligation to serve the post-trial interests of his or her client includes a responsibility to ensure that appropriate sentence credits are applied against the sentence approved by the convening authority. See David A. Schlueter, Military Criminal Justice Practice and Procedure § 17-2(B)(7) (6th ed.2004). As noted in Sehlueter’s treatise, “defense counsel should be prepared to file any written briefs or documentation that demonstrate accused’s entitlement to a sentence credit.... [A]ny information about sentence credits should be transmitted to the convening authority at an early opportunity.” Id.
The defense has multiple opportunities to present information about confinement conditions to the convening authority before the convening authority decides whether to approve the sentence. See R.C.M. 1105; R.C.M. 1106; Article 38(c), UCMJ, 10 U.S.C. § 838(c) (2000); United States v. Fagnan, 12 C.M.A. 192, 195, 30 C.M.R. 192, 195 (1961). See generally David A. Shaw, The Article 38c Brief: A Renewed Vitality, Army Law., June *480 1975, at 26. Given this direct access to the convening authority, defense counsel “bears a ... [heavy] burden of ensuring that the convening authority is aware of those matters that indicate that clemency may be warranted.” Schlueter, supra, at § 17-8(B)(1).
C. DEVELOPMENT OF THE FACTUAL RECORD
1. Trial and post-trial proceedings (December 2008-March 200k)
a. The Appellate Rights Memorandum
Two days before his trial, Appellant signed and initialed a memorandum documenting his post-trial rights. Appellant acknowledged that:
I have the right to submit any matters I wish [sic] the convening authority to consider in deciding what action to take in my case---- If I have matters that I wish the convening authority to consider, ... such matters must be submitted within 10 days after I or my counsel receive a copy of the record of trial____
b. Trial and Sentencing
On December 16, 2003, in Tikrit, a special court-martial consisting of a military judge sitting alone adjudged the sentence in Appellant’s ease. The sentence included eight months of confinement.
c. Appellant’s Memorandum to the Convening Authority
On January 1, 2004, Appellant submitted a memorandum to the convening authority requesting approval of an administrative discharge or reduction of confinement to no more than four months. Appellant’s request was typed on “United States Army Trial Defense Service” letterhead, with the image of the Department of Defense symbol and the reply address of the Trial Defense Service.
In his two-page memorandum, Appellant admitted having made mistakes in his life, and accepted responsibility for the crimes he committed. He told the convening authority that he wrote the letter not to make excuses, but to ask for clemency. He described his difficult childhood and the abuse he suffered in foster homes. Appellant discussed his decision to join the military, and the happiness he found in the Army. Finally, he told the convening authority that he was ready to excel again in the civilian world, and that approval of his request for a post-trial administrative discharge or reduction of confinement would give him the head start he needed. Appellant concluded by thanking the convening authority for reading his letter.
The January 1 memorandum did not mention the conditions of Appellant’s confinement. The memorandum did not indicate that he was incarcerated with enemy prisoners, that he was incarcerated in irons, or that he had any concerns about health, or safety, or improper treatment. Appellant did not indicate that he had any difficulty in contacting his lawyer or his unit during his incarceration.
d. The SJA’s Posh-Trial Recommendation
The staff judge advocate (SJA) submitted the required post-trial recommendation under R.C.M. 1106 to Appellant’s defense counsel on January 30, 2004. The defense counsel acknowledged receipt the same day. The SJA’s post-trial advice recommended approval of the adjudged sentence except for any confinement in excess of seven months, as provided for in the pretrial agreement.
e. Defense Counsel’s Submission to the Convening Authority
On February 6, 2004, Appellant’s defense counsel submitted post-trial matters to the convening authority “[p]ursuant to [R.C.M.] 1105 and 1106 and Articles 38(e) and 60.” The submission consisted of a two-page memorandum typed on “U.S. Army Trial Defense Service” stationary. The memorandum included the Trial Defense Service Tikrit Field Office reply symbol and address in Iraq.
Defense counsel’s memorandum did not request any corrections to or changes in the SJA’s post-trial advice. The defense requested that the convening authority approve *481 an administrative discharge or, in the alternative, disapprove any confinement in excess of four months.
Defense counsel described Appellant’s background and his efforts to become a good soldier. The defense memorandum attached two stipulations of expected testimony from Appellant’s trial in which noncommissioned officers who knew Appellant vouched for his ability to overcome his troubles. Defense counsel personally offered to discuss Appellant’s case with the convening authority, and listed his phone number at Forward Operating Base Speicher in Tikrit, Iraq.
f. The SJA’s Addendum and the Convening Authority’s Action
The SJA’s Addendum to the post-trial recommendation, dated March 7, 2004, acknowledged Appellant’s R.C.M. 1105 and 1106 submissions, and adhered to the original recommendation. The convening authority acted that same day, approving Appellant’s sentence to confinement for seven months, reduction to Private E-l, and a bad-eonduet discharge.
2. Proceedings before the Court of Criminal Appeals
a. Appellant’s First Affidavit
On August 9, 2004, while in the State of Texas, Appellant signed a four-page affidavit, which he wrote “to accompany” the appellate brief in his case. The affidavit described his conditions of confinement in Tikrit, Iraq, and Camp Arifjan, Kuwait. Appellate defense counsel included the affidavit as Appendix A in the brief filed with the Court of Criminal Appeals.
The affidavit is the first document in the record in which Appellant discusses the conditions of his confinement. The affidavit describes the first week after his sentence was adjudged, in which he was confined in Tikrit, Iraq. The affidavit stated that: Appellant spent one week confined in Tikrit along with Iraqi prisoners; he was separated from the Iraqis by only a strand of concertina wire, and he was able to recognize some of the Iraqi prisoners as having been incarcerated previously with his unit; he was placed in handcuffs and leg irons the entire time he was incarcerated in Tikrit, even while eating and sleeping; he was housed approximately fifteen feet away from two Iraqi prisoners with tuberculosis for five days. The affidavit stated that after one week in Tikrit, he was transferred to Camp Arifjan, Kuwait, where he spent the remainder of his seven month sentence in poorly ventilated conditions, oppressive heat, and unsatisfactory hygiene and dining facilities. He was released in June 2004.
The affidavit does not mention any attempt on his part to talk with prison authorities or his defense counsel about his treatment in Tikrit or Kuwait. The affidavit contains no claim that he was discouraged or prevented from complaining about the conditions of his confinement. The affidavit contains no indication as to why he did not raise these matters to the convening authority or otherwise file a complaint during the period in which he had the active assistance of defense counsel in submitting post-trial matters.
b. Appellant’s Brief to the Court of Criminal Appeals
Appellant’s brief to the Army Court of Criminal Appeals alleged cruel and unusual punishment during his incarceration in Iraq and Kuwait. The defense brief did not address the issue of exhaustion of administrative remedies, nor did the brief otherwise indicate why Appellant had not complained to military authorities requesting relief from the appellate courts. The brief did not claim that trial defense counsel had been ineffective in his post-trial representation of Appellant.
c. The Government’s Brief at the Court of Criminal Appeals
The Government’s Answer at the Court of Criminal Appeals addressed Appellant’s complaints of cruel and unusual punishment by asserting Appellant’s failure to exhaust administrative remedies. Appellant did not file a reply brief to the Court of Criminal Appeals and did not file a further affidavit at *482 that court addressing the question of exhaustion.
d. The Decision of the Court of Criminal Appeals
The Court of Criminal Appeals affirmed in a summary disposition.
3. Further appellate proceedings
a. The Petition for Review
Appellant sought a grant of review under this Court’s discretionary jurisdiction, Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2000). In his petition supplement, Appellant requested that we grant review of a single issue, whether his confinement conditions constituted cruel and unusual punishment under Article 55, UCMJ, 10 U.S.C. § 855 (2000), and the Eighth Amendment to the Constitution. The Government filed a letter response attaching its brief before the Court of Criminal Appeals in which it argued that Appellant had failed to exhaust his administrative remedies. Appellant did not address exhaustion in his petition supplement, and did not file a reply to the Government’s submission.
b. The Grant of Review
On August 15, 2006, this Court granted review of a modified issue, asking whether Appellant’s confinement conditions were unlawful, and “whether, in the context presented, Appellant forfeited his claims of unlawful post-trial punishment by failing to exhaust his administrative remedies.”
c. Appellant’s Second Affidavit
On September 21, 2006, Appellant wrote and signed an affidavit that, for the first time, addressed exhaustion of administrative remedies. The affidavit stated that he had not had any contact with his unit or anyone else during the week following December 16, 2003, in which he was confined in Tikrit. He stated that he had not received normal in-processing in Tikrit, and was not informed how to contact an attorney or how to raise concerns and complaints. He stated that when he tried to speak with American personnel he was ignored. He added that after he arrived at the confinement facility in Kuwait he was allowed to file complaints and raise concerns about the Kuwait facility, but was told that he could not complain about the conditions in Tikrit because it was a different facility. He further stated that he did not receive any explanation about the Article 138, UCMJ, 10 U.S.C. § 938 (2000), grievance process, and that he did not know what it was, how it worked, or how he could use it to address his treatment in confinement.
The affidavit makes no mention of his submission to the convening authority on January 1, 2004, a week after he completed his confinement in Tikrit, nor does the affidavit address the representation he received from his defense counsel over the next two months. The affidavit offers no explanation as to why he did not request relief from the convening authority in his post-trial submission during the period in which he was receiving legal representation by trial defense counsel on post-trial matters.
The brief filed by appellate defense counsel likewise is silent on these matters. Appellant has not addressed his failure to request redress during the period in early 2004, immediately following his time in the Tikrit facility, in the context of the direct communications that he and counsel were having with the convening authority. The defense brief makes no claim that combat, field, or operational conditions facing Appellant and his counsel restricted communications between counsel and client, or otherwise inhibited the filing of a complaint during the two-month period following his time in the Tikrit facility when counsel and client were communicating with the convening authority. The defense brief makes no claim of ineffective assistance of counsel either with respect to the submissions to the convening authority or with respect to preserving Appellant’s rights by seeking redress under Article 138, UCMJ, or otherwise.
II. DISCUSSION
The primary focus of the present case is Appellant’s confinement in Tikrit during the week after his December 16, 2003, court- *483 martial. The record demonstrates that in the two-month period following his confinement in Tikrit, Appellant had access to counsel, communicated with counsel, and submitted requests for sentence relief to the convening authority while he was incarcerated. Appellant’s brief does not explain why he failed to request that the convening authority provide him with sentence credit for illegal confinement, or why he did not have an adequate opportunity to utilize the assistance of counsel in obtaining redress. Since his release from confinement, Appellant has not asserted that operational conditions or any other circumstances inhibited his communication with counsel during the period in which the defense was making submissions to the convening authority. He has not asserted that his defense counsel was ineffective for failing to inquire about or pursue the conditions of his post-trial confinement.
The record demonstrates that Appellant had a clear opportunity to seek relief during the period immediately following his confinement in Tikrit when he was in communication with defense counsel and the convening authority. The record does not contain an adequate explanation for Appellant’s failure to do so during that period. A request for relief at that time would have provided the opportunity to create an appropriate administrative record of his confinement conditions. As the Supreme Court recently observed in Woodford, 126 S.Ct. at 2388, witnesses could have been identified and questioned while memories were still fresh, and evidence could have been gathered and preserved.
Under these circumstances, whether the burden falls on Appellant or on the Government, the record demonstrates that Appellant’s claim does not meet the exhaustion of remedies requirement. In that posture, it would be inappropriate to provide Appellant with the opportunity to create the record now that could have been created near the time of his incarceration in Tikrit. Further inquiry into the merits of the claim is unwarranted. Accordingly, I respectfully dissent from the majority’s decision to remand this case for further proceedings on the merits of Appellant’s claim.